**LENSCRAFTERS, INCORPORATED,**
Plaintiff,

v.

**Don SUNDQUIST, in his Official capacity as Governor of the State of Tennessee, et al., Defendants.**

**U.S. Vision, Cole Vision Corporation, and National Association of Optometrists and Opticians,**

v.

**Don Sundquist, in his Official capacity as Governor of the State of Tennessee, et al., Defendants.**

No. 3:98–0150, 3:00–0096.

United States District Court,
M.D. Tennessee,
Nashville Division.

Feb. 8, 2002.

Barbara Jean Moss, Stephen J. Zralek, Wyatt, Tarrant & Combs, Nashville, TN, Stacey Leigh Jarrell, Julie A. Maloney, Thorp, Reed & Armstrong, Pittsburgh, PA, Michell Wyrick, Pamela J. Ledford, Wyatt, Tarrant & Combs, Louisville, KY, Barry Friedman, New York, NY, for U.S. Vision, Cole Vision Corp., National Ass'n of Optometrists and Opticians, plaintiffs in Case No. 3:00–0096.

Barbara Jean Moss, Wyatt, Tarrant & Combs, Nashville, TN, Stacey Leigh Jarrell, Julie A. Maloney, Thorp, Reed & Armstrong, Pittsburgh, PA, Michell Wyrick, Pamela J. Ledford, Wyatt, Tarrant & Combs, Louisville, KY, Barry Friedman, New York, NY, for LensCrafters, Inc., plaintiffs in Case No. 3:98–0150.

Eugene N. Bulso, Jr., Jeffrey S. Bivins, Boult, Cummings, Conners & Berry, Nashville, TN, Perry Allan Craft, Jennifer L. Rawls, Nicholas G. Aemisegger, Jr., Office of Atty. Gen. and Reporter, Nashville, TN, for Don Sundquist, Kenneth W. Nix, Steve Malone, Dennis Matthews, Jerry Richt, Terry Hendrickson, defendants in Case No. 3:00–0096.

Eugene N. Bulso, Jr., Barbara Hawley Smith, Boult, Cummings, Conners & Berry, Nashville, TN, Perry Allan Craft, Jennifer L. Rawls, Office of Atty. Gen. and Reporter, Nashville, TN, Michell Hohnke Joss, Harris, Shelton, Dunlap, Cobb & Ryder, PLLC, Memphis, TN, for Don Sundquist, defendant in Case No. 3:98–0150.

Michell Hohnke Joss, Harris, Shelton, Dunlap, Cobb & Ryder, PLLC, Memphis, TN, for E. Gwin Anderson, Pattie Douglas, defendants in Case No. 3:98–0150.

Michell Hohnke Joss, Harris, Shelton, Dunlap, Cobb & Ryder, PLLC, Memphis, TN, Eugene N. Bulso, Jr., Jeffrey S. Bivins, Barbara Hawley Smith, Boult, Cummings, Conners & Berry, Nashville, TN, for Tommy J. Ducklo, defendant in Case No. 3:98–0150.

Perry Allan Craft, Jennifer L. Rawls, Office of Atty. Gen. and Reporter, Nashville, TN, Michell Hohnke Joss, Harris, Shelton, Dunlap, Cobb & Ryder, PLLC, Memphis, TN, for Steve Malone, Dennis Mathews, Kenneth W. Nix, defendants in Case No. 3:98–0150.

## MEMORANDUM

TRAUGER, District Judge.

Pending before the court is the defendants' Motion to Dismiss all claims against defendant Governor Don Sundquist (LensCrafters Docket No. 98),[1] to which the plaintiffs have responded (LensCrafters Docket No. 100), the defendants have replied (LensCrafters Docket No. 104), and the plaintiffs have filed a sur-reply (LensCrafters Docket No. 113)[2]. For the reasons discussed herein, the defendants' motion will be granted.

## I. STATEMENT OF FACTS AND PROCEDURAL HISTORY

Plaintiff LensCrafters, Inc. ("LensCrafters") filed the lead case on February 19, 1998, challenging the constitutionality of Tenn.Code Ann. § 63–8–113(c)(6) under the Fourteenth Amendment's Due Process and Equal Protection clauses and under the dormant Commerce Clause of Article I of the United States Constitution. (LensCrafters Docket No. 1) The defendants moved to dismiss this case on the grounds that it did not present an actual case or

---

1. Prior to the Agreed Order of February 5, 2002 (LensCrafters Docket No. 111), these cases were not consolidated formally. As a result, they maintained separate dockets until this point. For clarity, the court will refer to the docket of Case No. 3:98–0150 as the "LensCrafters Docket" and to the docket of Case No. 3:00–0096 as the "U.S. Vision Docket," and citations will reference the docket upon which a document appears. The defendants' motion, which was filed prior to the consolidation, applies to both cases, and the plaintiffs have offered a single response to that motion.

2. In their sur-reply, the plaintiffs offer not to contest the dismissal of Governor Sundquist if the court allows their concurrent motion for leave to add the Tennessee Commissioner of Health as a defendant. (LensCrafters Docket No. 113 at 17) That motion (LensCrafters Docket No. 112) is not yet ripe and will be ruled upon, if no Agreed Order is tendered, upon receipt of a timely response.

controversy in light of a decision of the Davidson County Chancery Court to reverse an order of the Tennessee Board of Optometry suspending the license to practice optometry of Dr. Jeffrey Rothman for violation of Tenn.Code Ann. § 63–8–113(c)(6). (LensCrafters Docket Nos. 18 & 19) At the time of his suspension, Dr. Rothman leased space and performed eye examinations in a LensCrafters location. (LensCrafters Docket No. 19, attach. Exs. A & C) The defendants' motion was denied on the grounds that LensCrafters presented a challenge to the constitutionality of the statute on its face and LensCrafters both suffered economic injury from the enforcement of the statute and faced the threat of further injunctions under the statute. (LensCrafters Docket No. 24)

On February 8, 1999, the defendants filed their Answer to the Complaint. (LensCrafters Docket No. 31) As affirmative defenses to the claims, the defendants alleged that the plaintiff lacked standing and that the Complaint failed to state a claim upon which relief may be granted. *Id.* at 8. On the same date, the defendants moved for summary judgment, arguing that the dispute could be resolved either on nonconstitutional grounds by finding that LensCrafters did not fall within the definition of a "retail store or other commercial establishment" regulated by the statute or by holding that the statute is constitutional on its face. (LensCrafters Docket Nos. 29 & 30) In response to the defendants' motion, the plaintiff argued that the proper approach was to certify to the Tennessee Supreme Court the question of whether LensCrafters was a "retail store or other commercial establishment." (LensCrafters Docket No. 34 at 4–8)

After oral argument on the defendants' motion (LensCrafters Docket No. 48), the court found that it was appropriate to certify the question of the reach of Tenn.Code Ann. § 63–8–113(c)(6) to the Tennessee Supreme Court. The court denied the defendants' motion for summary judgment as premature (LensCrafters Docket No. 50) and entered an order on August 4, 1999 certifying the following question of law to the Tennessee Supreme Court: "Whether an entity engaged primarily in the business of selling and dispensing ophthalmic lenses and frames is a 'retail store or other commercial establishment' within the meaning of Tenn.Code Ann. § 63–8–113(c)(6)" (LensCrafters Docket No. 51).

On February 2, 2000, plaintiffs U.S. Vision and Cole Vision Corporation ("Cole Vision") filed a second suit against the members of the Tennessee Board of Optometry and the Governor of the State of Tennessee challenging the constitutionality of Tenn.Code Ann. § 63–8–113(c)(6). (U.S. Vision Docket No. 1) On February 4, 2000, the Tennessee Supreme Court accepted certification of the question of law posed in the LensCrafters case. (LensCrafters Docket No. 55) Thereafter, the defendants moved to dismiss the U.S. Vision case on the ground that the plaintiffs lacked standing to bring the suit or, in the alternative, to stay proceedings in that case pending disposition of the question certified to the Tennessee Supreme Court in the LensCrafters case. (U.S. Vision Docket No. 17) The court granted the motion for a stay of the proceedings and held the motion to dismiss in abeyance. (U.S. Vision Docket No. 30)

On December 13, 2000, the Tennessee Supreme Court issued an opinion answering the court's certified question in the affirmative. (LensCrafters Docket No. 56) The court then held a joint case management conference for both cases and, pursuant to the parties' agreement, ordered that the two cases would be consolidated for discovery and pre-trial purposes and noted that the cases may be consolidated formal-

ly at a later date. (LensCrafters Docket No. 67; U.S. Vision Docket No. 35) The court set both cases for trial on January 6, 2003. (LensCrafters Docket No. 66; U.S. Vision Docket No. 36) At the conference, the defendants stated their intent to file an additional motion to dismiss, and the court orally instructed them that they must seek leave of the court prior to filing any additional dispositive motions. (LensCrafters Docket No. 64; U.S. Vision Docket No. 33)

On February 20, 2001, the defendants filed their Answer in the U.S. Vision cases, asserting as an affirmative defense that the Complaint fails to state a claim upon which relief may be granted. (U.S. Vision Docket No. 39) On May 18, 2001, the U.S. Vision plaintiffs moved to amend their Complaint to join as a party plaintiff the National Association of Optometrists and Opticians ("NAOO"). (U.S. Vision Docket No. 42) The court granted the motion, and the Amended Complaint was filed on August 14, 2001. (U.S. Vision Docket No. 46) The defendants filed an Answer to the Amended Complaint on August 31, 2001, asserting the following affirmative defenses:

(1) Plaintiffs lack standing;

(2) The Amended Complaint fails to state a claim upon which relief may be granted;

(3) The Tennessee Supreme Court's ruling in *LensCrafters, Inc. v. Don Sundquist, et al.*, 33 S.W.3d 772 (2000), declares the statute at issue, Tenn.Code Ann. § 63–8–113(c)(6) constitutional, and that decision controls this action;

(4) The United States Constitution and the 11th Amendment bar suit against the State of Tennessee and this particular action; and

(5) The lawfully enacted statute was passed pursuant to the Tennessee legislature acting within its discretion.

(U.S. Vision Docket No. 47)

On December 19, 2001, the defendant Don Sundquist filed the instant motion to dismiss all claims in both cases.

## II. ANALYSIS

The defendant Don Sundquist has moved for the dismissal of all claims against him in his official capacity as Governor of the State of Tennessee pursuant to Fed.R.Civ.P. 12(b)(6) on the ground that he is immune from suit under the Eleventh Amendment to the United States Constitution. The plaintiffs respond that the motion should be denied because (1) it violates the court's instruction at the February 5, 2001 case management conference to first seek leave to file an additional dispositive motion; (2) it is untimely under Fed.R.Civ.P. 12(b); (3) Governor Sundquist is not entitled to immunity from these claims under the Eleventh Amendment; and (4) even if Governor Sundquist would otherwise be immune, he was waived any right to assert this defense.

The plaintiffs are correct that, at the February 5, 2001 case management conference, the court instructed the defendants not to file any additional dispositive motions without prior leave of the court. However, the court inadvertently neglected to issue a written order to that effect subsequent to the conference. There have been several substitutions of defense counsel during the pendency of this case, and the present counsel was not involved in the case at the time of the case management conference. Although counsel should have been informed of the court's instruction, the motion will not be dismissed on this basis.

The plaintiffs also correctly note that the defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is not time-

ly. The defendants have filed answers to each of the Complaints and to the U.S. Vision plaintiffs' Amended Complaint. Rule 12(b) states that "[a] motion making any of these defenses shall be made before pleading if a further pleading is permitted." Courts have interpreted this language in several ways. *See Aldabe v. Aldabe,* 616 F.2d 1089, 1093 (9th Cir.1980) (citing cases). Under Rule 12(h)(2), however, the defendants have not necessarily waived their ability to raise the defense of failure to state a claim by failing to raise it prior to filing an answer. *See* FED. R. CIV. P. 12(h)(2).

On review, the court finds that the appropriate resolution is to consider the defendants' motion as a motion for judgment on the pleadings under Rule 12(c), which may be filed after an answer. *See Jackson v. Heh,* 215 F.3d 1326, 2000 WL 761807, at *3 (6th Cir.) (table). A motion for judgment on the pleadings on the grounds of failure to state a claim utilizes the same standard as a Rule 12(b)(6) motion. *See Morgan v. Church's Fried Chicken,* 829 F.2d 10, 11 (6th Cir.1987); *see also Jackson,* 2000 WL 761807, at *3. Thus, the defendants' motion to dismiss will be converted to a motion for judgment on the pleadings under Rule 12(c).

In deciding a motion to dismiss for failure to state a claim under either Rule 12(b)(6) or Rule 12(c), the court will accept the facts as the plaintiff has pleaded them as true. *See Performance Contracting, Inc. v. Seaboard Surety Co.,* 163 F.3d 366, 369 (6th Cir.1998); *Weiner v. Klais and Co., Inc.,* 108 F.3d 86, 88 (6th Cir.1997). The court will not dismiss for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45, 46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). "A complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." *Performance Contracting,* 163 F.3d at 369. This narrow inquiry is based on whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). "Indeed it may appear on the face of the pleadings that recovery is very remote and unlikely but that is not the test." *Id.*

■ The defendants have moved to dismiss the claims against Governor Sundquist on the ground that they are barred by the Eleventh Amendment to the United States Constitution. The plaintiffs respond that Governor Sundquist is a proper defendant under *Ex Parte Young,* 209 U.S. 123, 155–56, 28 S.Ct. 441, 452, 52 L.Ed. 714 (1908), and that he has waived this defense by consenting to these lawsuits. These arguments will be addressed separately.

The first question is whether Governor Sundquist, in his official capacity, would be immune from suit unless he waives such immunity. Under *Ex Parte Young,* 209 U.S. 123, 155–56, 28 S.Ct. 441, 452, 52 L.Ed. 714 (1908),

individuals who, as officers of the state, are clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties affected an unconstitutional act, violating the Federal Constitution, may be enjoined by a Federal court of equity from such action.

The plaintiffs argue that Governor Sundquist is clothed with such authority through his statutory responsibility to appoint members of the Board of Optometry. The Board is empowered to "[m]ake rules, regulations, policies and procedures not inconsistent with the laws of this state, for

the proper performance of its duties to carry out the purposes, and to enforce the provisions of this chapter ...," including the provision being challenged by these plaintiffs. Tenn.Code Ann. § 63–8–112(1) (1997). The defendants do not assert Eleventh Amendment immunity with regard to the members of the Board and concede that they are proper defendants.

With regard to Governor Sundquist, the plaintiffs rely on *Lawson v. Shelby Co., Tenn.*, 211 F.3d 331, 335 (6th Cir.2000), *reh'g denied* (Sept. 22, 2000), for the position that the governor may be sued in his official capacity based on the unconstitutional enforcement of a statute. Although *Lawson* did find that the defendants' motion to dismiss was improper with regard to the governor and to the members of the Shelby County Election Commission, the court did not reach the issue of whether the governor had a special relationship to the enforcement of the statute that would justify a claim for injunctive relief against him. The court merely held that the dismissal was improper under *Ex Parte Young* because the officials "*may* be stripped of their character as agents of the state when they violate federal law." *Id.* (emphasis added).

By contrast, the defendants rely on *Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412 (6th Cir.1996), wherein the Sixth Circuit held that dismissal of the Attorney General of Ohio was proper because he had no specific enforcement powers with regard to the challenged statutes. *See id.* at 1416–18. The court noted that " '[g]eneral authority to enforce the laws of the state is not sufficient to make government officials the proper parties to litigation challenging the law.' " *Id.* at 1416 (quoting *1st Westco Corp. v. Sch. Dist. of Philadelphia*, 6 F.3d 108, 113 (3rd Cir.1993)).

The sole argument offered by the plaintiffs regarding Governor Sundquist's enforcement authority is that he is responsible for appointing the members of the Board of Optometry from a list of candidates submitted by the Tennessee Optometric Association. This is insufficient to show that Governor Sundquist is clothed with some duty in the enforcement of the optometry statutes under *Ex Parte Young*.

Separately, the plaintiffs claim that Governor Sundquist is a proper defendant under *Ex Parte Young* because they are challenging the constitutionality of legislation that involves a substantial public interest. In support of this argument, the plaintiffs rely on *Allied Artists Picture Corp. v. Rhodes*, 679 F.2d 656, 665 n. 5 (6th Cir.1982). In *Allied Artists*, the Sixth Circuit noted that

> [*Ex Parte Young*] requires that the state officer sued have 'some connection' with the enforcement of the allegedly unconstitutional Act. Even in the absence of specific state enforcement provisions, the substantial public interest in enforcing the trade practices legislation involved here places a significant obligation upon the Governor to use his general authority to see that state laws are enforced .... We thus find that the Governor has sufficient connection with the enforcement of the Act that he falls outside the scope of eleventh amendment protection and may be sued for the declaratory and injunctive relief requested here. Were this action unavailable to the plaintiffs, they would be unable to vindicate the alleged infringement of their constitutional rights without first violating an Ohio statute requiring a significant change in their business conduct. Such a result is clearly what the doctrine in *Ex Parte Young* was in part designed to avoid.

*Id.*

As the defendants argue, *Allied Artists* is distinct from this case because the plaintiffs' claims would not be precluded by

allowing Governor Sundquist to assert Eleventh Amendment immunity. In this case, there is a separate body, the Tennessee Board of Optometry, that has been clothed with exactly the enforcement responsibility that *Ex Parte Young* describes. As a result, there is no need to rely on the governor's general obligation to enforce the laws of this State in order to enable the plaintiffs to seek relief from the statute.

■ Governor Sundquist is not precluded from asserting Eleventh Amendment immunity under *Ex Parte Young*. Thus, the court must address the plaintiffs' argument that the defendants have waived any right to assert the Eleventh Amendment as a defense in these cases. In *Wisconsin Dept. of Corrections v. Schacht*, 524 U.S. 381, 118 S.Ct. 2047, 141 L.Ed.2d 364 (1998), the United States Supreme Court found that

> [t]he Eleventh Amendment ... does not automatically destroy original jurisdiction [of the federal court]. Rather, the Eleventh Amendment grants the State a legal power to assert a sovereign immunity defense should it choose to do so. The State can waive the defense. Nor need a court raise the defect on its own. Unless the State raises the matter, a court can ignore it.

*Id.,* at 389, 118 S.Ct. at 2052 (internal citations omitted).

The issue presented by this case is what constitutes effective waiver by the State. The plaintiff argues that the defendants waived Eleventh Amendment immunity through Governor Sundquist's participation in both previous motions to dismiss

and the motion for summary judgment. In addition, Governor Sundquist has participated in discovery over the last ten months and in non-dispositive motions, including opposing both the LensCrafters plaintiffs' Motion for a Protective Order (LensCrafters Docket No. 84) and the U.S. Vision plaintiffs' Motion for Leave to File an Amended Complaint (U.S. Vision Docket No. 45) Also, Governor Sundquist did not raise the Eleventh Amendment defense in either of the defendants' answers to the plaintiffs' initial complaints. Instead, the defense was raised for the first time in the Answer to the U.S. Vision plaintiffs' Amended Complaint, which served only to join the NAOO as a party plaintiff. (U.S. Vision Docket No. 47)

Based on these facts, the plaintiffs claim that the defendants have waived any Eleventh Amendment immunity from suit. As the basis for this argument, the plaintiffs rely on the Sixth Circuit's decision in *Lawson v. Shelby Co., Tennessee*, 211 F.3d 331 (6th Cir.2000), *reh'g denied* (Sept. 22, 2000), wherein the court found that

> a state may waive the protection of the Amendment by consenting to the suit. Consent may occur in a number of ways. A state may expressly waive immunity from suit for money damages in court. Consent may also take the form of a voluntary appearance and defense on the merits in federal court. Furthermore, consent may result when the state agrees to administer a federal-state program that imposes certain federal standards upon the state.

*Id.* at 334 (internal citations omitted).[3] The plaintiffs claim that Governor Sund-

---

3. Other circuits are split as to whether voluntary appearance and defense on the merits constitutes waiver of Eleventh Amendment immunity. *Compare In re SDDS, Inc.,* 225 F.3d 970, 972–73 (8th Cir.2000), *cert. denied,* 532 U.S. 1007, 121 S.Ct. 1733, 149 L.Ed.2d 658 (2001) (finding that voluntary appearance and defense on the merits does constitute

waiver) *and Hill v. Blind Indus. and Servs. of Maryland,* 179 F.3d 754, 759 (9th Cir.1999), *as amended on denial of reh'g,* 201 F.3d 1186 (9th Cir.1999) (same) *with Montgomery v. Maryland,* 266 F.3d 334, 338 (4th Cir.2001) (finding that "circuit precedent allows the Eleventh Amendment to be raised for the first

quist's actions thus far constitute consent through his voluntary appearance and defense on the merits of the case.

The defendants argue that the Sixth Circuit's statement in *Lawson* that consent to suit may be in the form of a voluntary appearance and defense on the merits is merely *dicta* and should be disregarded as contradicting Supreme Court precedent. (LensCrafters Docket No. 104 at 3–4) The defendants are correct. The Sixth Circuit found that waiver by consent was inapplicable to the facts in *Lawson;* thus, the court's statements regarding what constitutes consent were *dicta. See Bridewell v. Cincinnati Reds,* 155 F.3d 828, 832 (6th Cir.1998) (noting that discussion in opinion that is not necessary to the holding is *dicta* ). Further, in *Edelman v. Jordan,* 415 U.S. 651, 677–78, 94 S.Ct. 1347, 1363, 39 L.Ed.2d 662 (1974), the Supreme Court held that "it has been well settled since the decision in *Ford Motor Co. v. Dep't of Treasury* [323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945) ], that the Eleventh Amendment defense sufficiently partakes of the nature of a jurisdictional bar so that it need not be raised in the trial court ...." [4] The statement in *Lawson* that consent could be found through voluntary appearance and defense on the merits would seem to contradict this holding.

More clearly, this statement contradicts prior decisions of the Sixth Circuit. In *Allinder v. Ohio,* 808 F.2d 1180 (6th Cir. 1987), the court found:

The [Eleventh Amendment] defense may be raised for the first time on appeal, *Edelman,* 415 U.S. at 678, 94 S.Ct. at 1363, and *a state's appearance and offer of defenses on the merits is no bar;* the defense is jurisdictional and may be raised at any stage of the proceedings.

*Id.* at 1184 (emphasis added) (citing *Florida Dep't of State v. Treasure Salvors, Inc.,* 458 U.S. 670, 683 n. 18, 102 S.Ct. 3304, 3314 n. 18, 73 L.Ed.2d 1057 (1982) (plurality) (opinion of Stevens, J.)) [5]; *see also Estate of Ritter v. Univ. of Michigan,* 851 F.2d 846, 852 (6th Cir.1988).

In the Sixth Circuit, "it is well-established that one panel of the Sixth Circuit cannot overrule the decision of another panel...." *United States v. Hawkins,* 274 F.3d 420, 428 (6th Cir.2001) (citing *United States v. Ables,* 167 F.3d 1021, 1027 (6th Cir.1999); *Salmi v. Secretary of Health & Human Servs.,* 774 F.2d 685, 689 (6th Cir.1985)). In *Ables,* the court found that

[a] fundamental principle of this court is that '[a] panel ... cannot overrule the decision of another panel. The prior decision remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting *en banc* overrules the prior decision.'

*Ables,* 167 F.3d at 1027 (quoting *Salmi,* 774 F.2d at 689).

time on appeal, regardless of whether the case was resolved on the pleadings or upon a grant of summary judgment") (citations omitted) *and Chittister v. Dept. of Comm. and Economic Dev.,* 226 F.3d 223, 227 (3rd Cir. 2000) (finding that "Eleventh Amendment immunity may be raised for the first time on appeal even if the state defended the merits of the suit in the district court").

4. *Schacht,* which states merely that a State can waive Eleventh Amendment immunity, does not clearly overrule *Edelman* 's holding

that the defense of immunity may be raised for the first time on appeal. In addition, as will be discussed, *infra,* the Sixth Circuit did not rely on *Schacht* as the basis for its statement.

5. In the plurality opinion in *Florida Dep't of State,* Justice Stevens noted that "[t]he fact that the State appeared and offered defenses on the merits does not foreclose consideration of the Eleventh Amendment issue...." *Florida Dep't of State,* 458 U.S. at 683 n. 18, 102 S.Ct. at 3314 n. 18 (opinion of Stevens, J.).

In *Lawson*, the panel relied solely on an 1883 decision by the United States Supreme Court as the basis for its statement that consent may be found in a defendant's voluntary appearance and defense on the merits of the case. *See Lawson*, 211 F.3d at 334 (citing *Clark v. Barnard*, 108 U.S. 436, 2 S.Ct. 878, 27 L.Ed. 780 (1883)). The court did not address the prior Sixth Circuit decisions clearly holding that voluntary appearance and defense on the merits did not constitute a waiver of Eleventh Amendment immunity. The court did not rely on *Schacht* as requiring a modification of previous circuit precedent, and, as noted, the Supreme Court's holding in *Schacht* is not inconsistent with the Sixth Circuit's previous position. Therefore, this court must rely on the prior decisions of the Sixth Circuit which held that voluntary appearance and defense on the merits of a case does not constitute waiver of Eleventh Amendment immunity.

Because this is the only basis for the plaintiffs' argument that the defendants have waived Eleventh Amendment immunity, the plaintiffs' argument must fail. The defendants have not waived the right to assert Eleventh Amendment immunity for claims against Governor Sundquist in his official capacity. Governor Sundquist's ability to assert immunity has not been abrogated by *Ex Parte Young* because the Governor has no direct enforcement authority with regard to the statute at issue in this case. Therefore, the plaintiffs' claims against Governor Sundquist in his official capacity are barred by the Eleventh Amendment and must be dismissed.

### III. CONCLUSION

For the reasons discussed herein, the claims against Governor Don Sundquist in his official capacity as the Governor of the State of Tennessee are barred by the Eleventh Amendment to the United States Constitution. Hence, the defendants' motion to dismiss the claims against Governor Sundquist in both the LensCrafters case and the U.S. Vision case (LensCrafters Docket No. 98) will be granted.

An appropriate Order shall Enter.

### ORDER

Pending before the court is the defendants' Motion to Dismiss all claims against defendant Governor Don Sundquist in both cases. (LensCrafters Docket No. 98) [1] For the reasons discussed in the accompanying Memorandum, the defendants' motion is **GRANTED**. The claims against Governor Sundquist in both cases are **DISMISSED**.

There is some confusion as to the current defendants in these cases. The plaintiffs in both the LensCrafters case and the U.S. Vision case have brought suit against the members of the Tennessee Board of Optometry in their official capacities. Under Fed.R.Civ.P. 25(d)(1), the current members of the Board should be substituted for any former members. The defendants have noted that the membership has changed since the initial Complaints were filed in both actions. Therefore, it is hereby **ORDERED** that the parties shall submit an Agreed Order substituting named defendants by February 20, 2000.

It is so Ordered.

---

1. Because these cases were not consolidated formally at the time of the defendants' motion, the court will refer to the docket of Case No. 3:98–0150 as the "LensCrafters Docket" and to the docket of Case No. 3:00–0096 as the "U.S. Vision Docket."